Judge Buckner,
delivered the opinion of the court.
On the 25lh of August, 1817, John Her-ron, in consideration of $1400, all of which has been paid, except one note for the sum of $300, executed his obligation to Zachariah Terrill, binding himself to make a deed whenever called for, to him, for a tract of land which Herron then lived on, described as containing three hundred and twenty-four acres, lying in Shelby county. Terrill, by the terms of the bond, was to have the land free from incumbrance, Herron binding himself therein to warrant the title, against a claim mentioned in said bond, as “the twenty thousand acres.” If the land should be lost by any other claim, *520 Herron was not to be responsible on that account. Á 'note for $¡300, executed by Terrill to Herron, was assigned by him to Parker, who sued upon it, and recov-ed judgment; whereupon, Terrill, in January, 1823, filed his bill in chancery, to be relieved against it.
The grounds of equity relied on are, that the note on which the judgment aforesaid had been recovered; was part of the $1400, the price of the lana; and that -he had been induced to enter into the contract, by the false and fraudulent representations of Herron; that his title was indisputable; and that he had a valid deed for the land so purchased; when,in truth, he nor those,under whom he claimed, had any legal title, for two hundred and two acres of it. The bill contains a prayer for an injunction, but does not demand a rescisión of the '■contract.
In February, 1825, Herron lodged an answer in the clerk’s office, sworn to, but which does not appear to have been regularly filed. He acknowledges the exe■cution of the bond, in the bill exhibited; says that he had purchased the land of Jonathan Ruble and Christian Leatherman, who had executed to him, bonds for ■a conveyance; one hundred acres of which, one Stephens had recovered by suit from him, which he had subsequently purchased from said Stephens, and conse-quently, when he sold to Terrill, claimed the part so sold, under not only that claim, but the twenty thousand acres survey. He says he did not know whether Ruble and C. Leatherman held a legal title to the land, but that they had a good equity, at least.
He denies that he made any fraudulent representations to Terrill, respecting the title, who was better acquainted with it than himself; and to whom, at the .time ■of the contract, he delivered all the waitings which he -held in relation to it, which he calls upon him to file. He insists that Terrill expected to obtain a deed from ‘Ruble and Leatherman, which was the reason, that by the bond,he, Herron, was “not to make one unless call>ed on.”
Parker; ih his answer, claims to be an innocent as-signee; says that he knows nothing of the consideration on which the note is founded; but that shortly after the assignment to him, Terrill told him it was good, •and promised to pay it, when due.
*521 In February, 1828, Herron filed an additional answer, making, in substance, the following statement.
The tract of twenty thousand acres, alluded to, in the obligation from him to Terrill, waspaientedto James Patton & Co. Prior to the year 1792, a division of it took place, between the patentees, by deeds of partition. The land sold to Terrill, was a part of that, which was allolted to said Patton, which he sold about the year 1792, to one John Leatherman, and conveyed it to him, by deed, in 1795, through his attorney in fact, William Ferguson. In 1792, said Leatherman took possession of it, which he retained until his death. By his last will and testament, he devised it to his wife, Hannah, for life; remainder to his nephew, Christian Leatherman. From the death of her husband, the widow remained in possession of it, until she intermarried with Jonathan Ruble, who, with said Hannah, continued to occupy it, until Herron purchased it. • The written evidences of the contract between him and Ruble and C. Leatherman, were delivered as stated in the first answer, to Terrill, at the time of his purchase, who has ever since enjoyed the unmolested possession of the land.
This answer was made a cross-bill against Terrill, Christian Leatherman, and Hannah Ruble, her second husband, Jonathan Ruble, having previously departed this life. It contains a prayer, that C. Leatherman and Mrs. Ruble should convey to him a title for the land, agreeably to contract.
Copies of the deed from Patton by Ferguson; of the power of attorney; and of the will of John Leather-man, are filed as exhibits.
‘The deed bears date in August, 1795, and is for one hundred and ninety-four acres, giving boundaries, and contains a general warranty of title.
The power of attorney is dated in January, 1795, and authorizes Ferguson to convey, by deeds, with general warranty, all lands sold by said Patton or his attorney, which belonged to Pope, Roberts, Thomas and Patton, in partnership.
J. Leatherman’s will was admitted to record in 1796, and by it, the whole of his real estate is devised to his *522 wife, Hannah Leatherman, for life, with remainder, as to the place on which he lived, at the time of making his will, which is the tract purchased by Terrill, to Christian Leatherman.
Hannah Ruble and Christian Leatherman filed their joint answer, admitting the allegations of the cross-bill. They say, that after the purchase by John Leatherman, from Patton, he sold parts of the land to different persons, reserving the improvements, with about three hundred acres of the surrounding land, which he devised to them, and attribute the fact, (hat the deed from Patton to their devisor, called for one hundred and ninety-four acres only, to a clerical mistake.
They offer to convey according to their contract, and tender a deed to Herron, for the land, which gives no boundaries, but describes it as the tract devised to them by J. Leatherman. The warranty in it, is against all only claiming through or under the grantors; but it is expressly provided, that they were not to be liable, in case there should be a less number of acres than (he deed called for.
Herron accepted the deed, and then filed another answer, stating the fact of his acceptance, and tendering to Terrill a deed for the same land, professing a willingness to make any further assurance which might, by the court, be deemed necessary to comply with his obligation. He denied that a deed had been demanded of him, by Terrill, otherwise than by the present suit; and assigns, as. a reason why he had not made one at an earlier period, that Terrill had possession of the bonds executed to him, by Ruble and Leatherman, from whom it was expected the conveyance would have been obtained. The deed thus tendered, is dated in 1828, and contains a warranty against the claims of all persons holding under the grantor, or under the survey for twenty thousand acres of Pope, Patton and Thomas.
In February, 1829, Terrill filed his answer to the cross-bill of Herron, denying the title to be such, as is therein set forth; but insisting that it is defective, and calling upon him to make it good. He denies the allegations of the cross-bill, as to the delivery to him of Ru■ble’s and Leatherman’s bond.
If assignee of a note in his answer to a bill filed to enjoin the collection, assert ignorance of the allegations of the bill and require proof, complainant cannot be surprised, if proof be exacted on the trial.
He says, moreover, it is not true, that he had enjoyed undisturbed possession of the land; that an action of ejectment had been instituted in the federal court, by one Stephens, for Hollingsworth, against Herron and others, whilst Herron was in possession, for the land; in which judgment had been recovered, and to revive-which, a scire facias was then depending.
He exhibits a transcript of the record of the ejectment, which was instituted in 1813, upon the demise of Levi Hollingsworth, for sixteen thousand three hundred and eighty acres, against Herron and others, against whom judgment had been recovered. The scire facias was not shown.
Upon the final hearing of the cause, the circuit court' entered a decree, dissolving the injunction, which Ter-rill had obtained against the judgment, on the $300 note, and giving ten per centum damages on the sum injoined, without ascertaining what they amounted to; and dismissing Terrill’s-bill with costs; to reverse which, he prosecutes this writ of error, assigning such errors, as present every question necessary to be considered.
That the note on which Parker recovered his judgment, was executed as a part of the price of the land, is rendered very probable from several considerations. It does not appear that there had been any contract between Terrill and Herron, except that respecting the purchase of the land. Had there been any other, Parker might easily have ascertained it, and' would doubtless have mentioned it. Herron does not deny that it constituted a part of the $1400. Under such circumstances, we should have been satisfied with a. single witness of the fact. But Parker, in his answer, declares his ignorance as to the consideration on which.the note was founded, and calls for proof of every allegation not admitted; It cannot be insisted, therefore, that by requiring proof of the consideration on the trial, he was taken by surprize. He had full warning, and omitted to produce any testimony on that point. Upon that ground alone, therefore, the dissolution of the injunction and dismission of the bill as to Parker was correct. But according to repeated decisions, the decree was erroneous, in not ascertaining the amount of damages. How much the sum injoined exceeded $300, cannot be ascertained from the record.
Where specific warranty against a named claim, loss of iand.by a different elaim, no ground for a rescisión of conti act.
With respect to the merits of the controversy between Terrill and Herron, we are not of opinion, that the circumstances of the case can justify a rescisión of the contract. The fraud charged as to Ilerrorfs representations, about his having a deed for the land, and the validity of his title, is not sufficiently established by the proof. He seems to have been a boasting, ignorant man, and on several occasions, once particularly, when under the influence of intoxication, declared he had a good deed for his land, &c. It is proved by one or two witnesses, that he made suchdeclaraiionsin the presence of Terrill; but under the aspect in which (his case is exhibited by the record, wc are convinced that Terrill was not deceived, and has not been injured by those declarations. How he was influenced by wbat Herron said, he does not attempt to explain. He does not say, under whom Herron represented himself as claiming, or from whom he had received a deed.
It isaltogetherimprohahle,that Terrill could have entered into a contract ior the land, binding himself to pay $1400 as the price, and actually paying $1100 of that sum, without ascertaining under what title he was purchasing, and relying entirely upon the declarations of Herron, that he had a deed. Herron was only to make him a deed, when called on, for that purpose, and was not to be bound further, than to warrant against those claiming under the survey of twenty thousand acres, and what survey was intended to be designated by that description, the bond does not show? Would not the supposition, therefore, be incredible, that be would have purchased, without using some exertions to ascertain the nature of Herron’s claim. T'et the only fraud complained of, is, that Herron told him he had a deed, hut from whom, under what claim, where it was recorded, or what had become of it, he docs not pretend that be made a single inquiry, or that Herron said one word. The existence of the judgment in ejectment does not at all strengthen the charge of fraud, when received in connexion with the other testimony; indeed it rather proves Terrill’s willingness to mend his hold, from time to time, as new views of the matter were suggested to his mind, and to seize, with avidity, upon every matter, whether justly or unjustly, which he thought calculated to aid him, in procuring a partial rescisión of a contract, *525 which, from the loss of a part of the land, by a claim which Herron had refused to warrant against, proved to be less advantageous than he had anticipated,
The judgment in ejectment was entered in May, 1818. That Tcrrdl was apprized of that judgment, when he commenced the pres'ent suit is apparent, for he was present at ■ the trial of it, and moved the court to appoint commissioners to value the improvements under the occupying claimant law, which was refuse’d, and he purchased the land from the successful claimant. That he knew of the pendency of the ejectment at the time of his purchase from Herron, is also very probable, for in his bill, he does not complain of, or even allude to it; and it is proved, that in the fall of 1818, when the note assigned to Barker was presented to him, Terrill said, it was good, and requested Parker to call for the money when due, as he did not wish to pay interest. It was not until February, 1829, that the judgment in ejectment presented itself to him, as a proper ground of complaint; and he does not venture even then to say, that it had been concealed from him.
Whether Herron did deliver to him, the bond (or bonds, if there were more than one) on Ruble and C. Leatherman, has not been satisfactorily shown. He denies it; and it is positively proved by one witness only, (Christian Leatherman,) who says that Terrill acknowledged he had the bond executed by the witness to Herron; and that he, witness, saw it in his possession. Another witness says, that when he inquired of Herron, in the presence of Terrill, on the same day, and immediately after the contract between them was concluded, what kind of title he was to be bound for, he replied, Terrill is to step into my shoes, as to title, which was not contradicted or denied by Terrill.
Another witness, however, swears, that Herron, in a conversatio'n with him, acknowledged that he had the papers, which he had accused Terrill of withholding from him. Although this matter is left in doubt, we are inclined very strongly to the opinion, that he received all the evidences of title, which Herron held, and that he was as well acquainted with his claim, as Her-ron himself was.
We cannot perceive any object of a fraudulent nature, which Herron could have had in view, which he *526 would have been more able to- advance, by inducing Terrill to believe he had a deed for the land. Had he told him, that he had received a deed from the patentee, or that he had a connected'chain of title from him; it would have presented a very different case.
It is worthy of remark, that Terrill does not allege a defect of title in Herron, as to the whole tract sold; but only as to two hundred and two acres; nor does he demand a rescisión of the contract; he only prays for a perpetual injunction against the judgment at law. We do not consider this as presenting any obstacle to the relief now insisted upon; for the bill contains a general prayer for relief; but it is mentioned only to show his view of the case, and as strengthening the presumption, that his only object was, to get rid of the judgment, for $300 and costs, as some compensation, for the loss he had sustained by the recovery in the. action of ejectment, in the name of Hollingsworth. Indeed, Christian Leatherman swears, that after the recovery of the judgment last mentioned, Terrill applied to him, proposing to compromise with him, respecting the loss of land sustained by the recovery of Hollingsworth, from which it is rendered still'more probable, that he held the bond, which he, the witness, had executed to Herron; and that Terrill did not suppose he had any cause of complaint against Herron. Be this as it may, we consider it as almost certain, that he was not ignorant of the nature of Herron’s claim, when he made the purchase in 1817. From the length of the undisturbed possession by Herron, and those under whom he claimed, it was entirely improbable, that there was any danger to be apprehended from any one deriving claim, under the twenty thousand acres survey. If, however, there should be, he was to be secured by the warranty of his vendor. As to any other claims, he agreed to run the risk, relying, it is probable, should any of them prevail against that, which he purchased, upon his right to demand a compensation for improvements, which, as before stated, he attempted unsuccessfully to assert. As to the claim then of Hollingsworth and all others, except that warranted against, it was a chancing bargain, by which, if he has lost, he has no right to complain; see the cases of Breckenridge, &c. vs. Waters; V Mon. 154; and of Morrison’s executors, &c. vs. Caldwell, Ibid, 439.
Difference p^ty Tt^ tempting to compel ven-vendee attempting to Paftial contract.
Title will ha favour* of thirty years peaceable contrary appear,
Though partv may sue at ? lavv and re-ges for faihire to convey land, yet it does not f„l-low that, if h® aPP]y to iorVrescis6-" ion of the contract will be eoreed*
Had a judgment at law been recovered against Her-ron, for failing to convey, and this were a suit instituted by him, to be relieved against it; or had there been an attempt by him, (without any judgment against at law,) to obtain a specific performance of the contract by compelling Terrill to accept the title, the case would have been presented in a very different attitude. But Terrill is here complainant, seeking partially to rescind tile contract, on the ground of a defect of title, and fraudulent representations by his vendor concerning it, when it is clear that he has not been defrauded, and that whatever injury he has sustained, has been the result his own mis-judgment.
If he could recover against Herron at law, it does not thence follow, that a court of chancery should afford its aid to rescind the contract.
From the date of Patton’s deed by Ferguson, his agent, to the institution of this suit has been between twenty-five and thirty years. During all that time, the land purchased by Terrill has been held, adversely to all the world, by him, and those under whom he claims, That has enforced a valid title, unless some person has a superior claim, which has not been barred, owing to some saving provision of the statute of limitations, embracing his claim. In the absence of all proof establishing such a fact, we will not presume it, in favor of Terrill’s attempt at a rescisión of his contract. Indeed the admission of such proof could not operate injuriously to Herron, unless it could be applied to the claim against which he agreed to warrant.
That Herron did not make conveyance when demanded, because he was not able to convey the legal title, until a short time previous to the decree entered in this case, does not render a rescisión more proper. For a refusal to make a deed, Terrill might have sued at law, and would have been entitled to a judgment, in dam„„p„ .
But he has preferred to present himself before the chancellor, signifying his willingness to accept a title to such portion of the land as his vendor might be enabled to convey, and not questioning his title, except to a part; and even in relation to that part, not denying in his hill his ability to 'procure a title; -or urging any danger to *528 be apprehended from the only claim, that Herron agreed to warrant against; but merely insisting that he, and those under whom he claimed, had not the legal title.
Tho’ a survey may not close -according to courses and ■ distances, yet if marked boundary be given, that is sufficient.
Though complainant may not be entitled to a re-scisión of contract prayed for, .yet it is error 'to dismiss bis bill, a conveyance should •be decreed, tvhon it ap-' 'pears he is entitled to oue.
It has been contended, that the possession of John Leatherman cannot be considered as extending beyond his actual enclosure, because it will he found, by making a diagram, from the courses called for, in the deed from Patton to him, that no land is included. It is true, the survey, according to the courses called for in the deed,’will not close; but it is evidently the result of a mistake in the draftsman. The beginning corner is called for, as -marked on a sugar tree in Patton and Pope’s dividing line; another of the corners was made on the dividing line between Thomas and Patton. Every corner of the survey is called for in the deed, as marked on particular trees; and the presumption is, therefore, strong, that Leatherman held by marked boundaries. Although the deed was executed in 1795, the proof is, that Leatherman took possession of the tract in 1792; and that possession has been ever since continued by him and others claiming under him. The witnesses who speak of Leatherman’s possession, seem to be well acquainted with the tract, and its boundaries. The first intimation of any difficulty upon the subject of boundary has been suggested in this court.
But notwithstanding it was proper, for the reasons mentioned, to refuse a rescisión of the contract, Terrill’s bill ought not to have been dismissed, even without prejudice ; and most certainly should not have been dismissed absolutely, lie was evidently entitled to a decree for a regular conveyance, by a deed giving boundaries, so that there may bé no difficulty of identifying the tract conveyed. No boundaries are given in the deed tendered by Herron to Terrill. It only describes the land, as being the tract, in Shelby county, which was in the occupation of the grantor, on the 25th of August, 1817, and which he had purchased of Ruble and C. Leather-man, containing three hundred and twenty-four acres, Whilst those facts, which are referred to as descriptive, can he proved, no difficulty with respect to the identity of the tract conveyed, could he presented.
The case may be very different after the wetnesses -may have dispersed or died. But the circuit court de- *529 breed no conveyance at alb Herron might have after the decree, to acknowledge and deliver, even the imperfect deed offered; and Terrill would he without remedy, unless he might find it in an additional suit. Had the deed tendered, been such as he was bound to receive, it would have still been improper to leave him, in the awkward predicament in which he was placed by the decree.
■'Mills and Brown, for plaintiff; Monroe, for defendant».
The deed from Leatherman’s devisees is subject to the same objections. Neither of those depds have,' moreover, been recorded, nor is it in the power of Ter-rill to cause them to be admitted to record, unless he again applies to a court of equity. It certainly cannot be proper thus to dispense justice by halves, and to- pronounce a decree, which but lays the foundation of additional necessary litigation.
The decree ofthe circuit court must be réversed, and the cause remanded for further proceedings to be had, •notinconsistent with this opinion.